ELMER I. GARNER ET AL., APPELLANTS, v. THE CITY OF AURORA, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

30 N. W. 2d 917

Filed February 13, 1948. No. 32298.

*Kirkpatrick & Dougherty*, for appellants.

*F. E. Edgerton, Charles F. Adams*, and *E. H. Powell*, for appellees.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

In an action for an injunction by taxpayers to prevent a city from cutting off their water supply for a violation of a garbage ordinance, the trial judge dismissed the petition after learning, outside of court, that the ordinance had been repealed. The petitioners appealed.

The plaintiffs brought an action for injunction against the City of Aurora, its mayor, councilmen, water commissioner, and chief of police, on behalf of themselves and all others similarly situated, and alleged in their petition that they were residents, freeholders, electors, and taxpayers in the defendant city, and received their sole supply of water from the city municipal water system. They further alleged that the city of Aurora had no Home Rule Charter, that it was governed by the provisions of the statutes of Nebraska, and that on December 10, 1946, said city enacted, passed, and approved Ordinance No. 217, as shown by exhibit A, attached to said petition.

Ordinance No. 217 may be briefly summarized as follows: Section 1 provided that through its street department the city should thereafter collect and remove all garbage, trash, and refuse from its streets and alleys. Section 2 provided that the city itself should act as a licensed garbage collector, but might contract to others the right to collect, hold, and dispose of said garbage; and that for such service the city should collect from each tenant, occupant, or owner the sum of 50 cents a month from each person, firm, or corporation having a water meter, and a larger sum from business and apartment houses. Section 3 provided that the water commissioner should make statements for such garbage collections on the water bills and render same each three months, should keep a separate ledger account of such garbage collections, and that such fees were

payable to the office of the water commissioner. Section 4 provided that the first quarterly payment of $1.50 for garbage disposal should be due and collected January 1, 1947, for three months in advance, and such garbage charge should become delinquent at the same time that bills for water become delinquent; it was made mandatory on the water commissioner to collect the entire bill when the same became delinquent; and in case of failure to pay the same, it was made his duty to shut off and disconnect the water service of such person, and to charge $2 as a fee for the resumption of garbage service and turning on the water. Section 5 provided that the water commissioner should turn all funds collected to the city treasurer, and said funds, after payment of operating and maintenance expenses, should be paid into the general fund of the city. Section 6 provided that the ordinance should be enforced under the rules and regulations of the sanitation and health committee of said city.

Plaintiffs' petition further alleged that on January 1, 1947, plaintiffs tendered to the water commissioner the regular rates charged for the city water service, which he refused to accept because of their failure to tender him at the same time the sum of $1.50 for garbage disposal service; that the water commissioner notified plaintiffs that unless said garbage disposal charges were paid for the three months beginning January 1, 1947, he would on January 15 cut off the water supply at their residences; and that plaintiffs tendered said water rates into court. They also alleged that they had no other source of water supply than that furnished through the municipal water system, and that they would be irreparably injured in a substantial amount, for which injury they had no legal remedy or redress.

Plaintiffs further alleged that said Ordinance No. 217 was ultra vires and void, not within the power granted to the city, is in conflict with the statutes of Nebraska, is unreasonable, not impartial in its operation, and un-

duly oppressive; that water supply and garbage disposal are not related to each other; that the enforcement of the ordinance would be unequal and not uniform in its operation, and would lay a tax on certain individuals for the purpose of defraying the general expenses of city government; and that the ordinance confers an unlawful discretion and arbitrary power upon the officers of the city which it is not within the power of the city to grant.

The prayer of plaintiffs' petition was that the city and its officers and agents be enjoined from cutting off plaintiffs' water supply and be enjoined from demanding the payment of garbage disposal charges as a condition of their right to have public water service; that the ordinance may be decreed to be void; and that defendants be enjoined from collecting any charges for garbage disposal under the ordinance, and for other equitable relief.

On the same day the petition was filed, January 9, 1947, a temporary restraining order was issued by the county judge and a bond for $200 approved by the clerk of the district court.

On January 18, 1947, a hearing was had before the district judge. It was admitted that the defendants had failed to file an affidavit showing the absence of both district judges from Hamilton county prior to the issuance of the restraining order by the county judge (section 25-1064, R. S. 1943), and the defendants moved the district judge, upon the positively verified petition, to issue a restraining order, which was done upon the plaintiffs furnishing a bond for $100.

On February 3, 1947, the defendants filed their answer, in which they denied every allegation not specifically admitted; admitted the allegations as to the parties and the passage of the ordinance; denied that plaintiffs had no legal remedy at law or that the said ordinance was ultra vires and void; alleged that plaintiffs had a full and adequate remedy at law; and prayed that the

petition be dismissed. Plaintiffs' reply denied all new matter in the answer.

On March 12, 1947, the matter came on for trial. The plaintiffs called as their first witness the water commissioner. He was examined with regard to more than a dozen men who with their families resided in the city of Aurora, secured their water supply from their own wells or pumps, were not patrons of the municipal water system, and had no meters which could be shut off to enforce the charges for collection of garbage from their homes.

The water commissioner was examined in regard to six men whose places of residence were outside the city limits, but who each had a separate meter and got their water supply from the city water system. Thereupon the plaintiffs rested.

The defendants made a motion for judgment for failure to produce evidence which would entitle plaintiffs to an injunction, on which motion the court reserved its ruling. Thereupon, the defendants called the mayor as their first witness. He testified as to the deplorable condition that the alleys were in, that numerous complaints had been made, and that the situation required the passage of the ordinance in question.

The water commissioner testified that on January 1, 1947, the city had 809 customers using water meters, and 24 of them had not paid their garbage fees. He testified that the city owned the equipment with which the garbage was collected under the ordinance, and paid $150 a month to the man who operates it. Thereupon the defendants rested and the case was taken under advisement by the court.

The bill of exceptions discloses that on March 31, 1947, the case came on for further proceedings, as follows: The plaintiffs offered in evidence exhibit No. 1, being the affidavit of W. L. Kirkpatrick and John E. Dougherty, sole members of the firm of attorneys representing the plaintiffs. The affidavit set out that neither

of them had any notice or knowledge of a session of said court being held on March 25, 1947, in which an order was entered dismissing the case at bar and waiving a complete record therein; that they first learned of it March 28, and they did not consent to such order as made by the court. Plaintiffs' attorneys also introduced in evidence exhibit No. 2, being a copy of the new ordinance, No. 218.

On the same day, March 31, they filed in the office of the clerk of the district court a motion and petition to vacate the dismissal entered and to reinstate the cause for further proceedings. Attached to said supplemental petition to reinstate said case was exhibit A, being a copy of Ordinance No. 218, passed and approved by the city on March 19, 1947, one section of which reads as follows: "Section VII. That Ordinance No. 217 be, and the same hereby is, repealed." The prayer of said supplemental petition read as follows:

"Plaintiffs therefore pray as in their petition; that said order herein entered dismissing this case and denying a record thereon to plaintiffs may be vacated and set aside and this cause reinstated for adjudication upon its merits; that the restraining order heretofore in effect as against said ordinance No. 217 may be continued in effect and may be extended to restrain the defendants from enforcing said ordinance No. 218 until an adjudication herein upon the merits and without further evasion upon the part of defendants; that this pleading may be permitted to stand not only as plaintiffs motion to vacate said order of dismissal, but as their supplemental petition herein and that defendants may be enjoined from enforcing, or attempting to enforce, said ordinance No. 218 also:

"Plaintiffs pray for costs and for all such other, further and different relief as may be just and equitable.'"

On said March 31, 1947, counsel for all parties were in open court. The trial judge stated that the case had been tried and taken under consideration on March 12,.

but, having seen a newspaper containing a publication of the new ordinance, No. 218, in which it was stated that Ordinance No. 217 was repealed, he had, in the absence of counsel, and without notice to them, and without their knowledge, entered a dismissal of this action on his own motion on March 25, and thereafter notified counsel of such action.

Thereupon, the court signed a journal entry setting out that on March 31, 1947, plaintiffs' motion to vacate the order of dismissal, which had been entered on March 25, was overruled, and that the petition for a reinstatement of the cause was also disallowed.

On April 4, 1947, a journal entry was entered, overruling the motion for a new trial, which had been filed March 28, 1947.

In the assignments of error, it is charged that the court erred in dismissing the action and in not deciding the case upon its merits; that the court erred in not granting to plaintiffs the injunctive relief for which they prayed, and in not decreeing that Ordinances No. 217 and No. 218 were void; that the court erred in overruling plaintiffs' motion to vacate the order of dismissal and permit the plaintiffs to controvert the assumption that the issues had been rendered moot by reason of said Ordinance No. 218; that the court erred in refusing to permit plaintiffs to plead and bring into the record Ordinance No. 218, in order that the threat therein perpetuated, to cut off plaintiffs' water supply, might likewise be enjoined; and that the court erred in overruling plaintiffs' motion and petition to vacate the order of dismissal, and in overruling plaintiffs' supplemental motion.

This case was tried to the lower court, evidence taken and submitted, the case taken under advisement, and then dismissed. Having the record before us, we deem it our duty not simply to reverse the action of the trial court, but to proceed in accordance with section 25-1925, R. S. 1943, which holds, in substance, that it shall be the duty of the Supreme Court to retry the issues of

fact, without reference to the conclusion reached in the district court. See Otto v. L. L. Coryell & Son, 141 Neb. 498, 3 N. W. 2d 915; Dundee Realty Co. v. City of Omaha, 144 Neb. 448, 13 N. W. 2d 634; Nitzel and Co. v. Nelson, 144 Neb. 662, 14 N. W. 2d 197.

Ordinance No. 217 was properly before the court, while Ordinance No. 218 was not.

"The authorities are uniform to the effect that a public service corporation cannot refuse to furnish its public service because the patron is in arrears with it on account of some collateral or independent transaction, not strictly connected with the particular physical service. For instance, electric companies frequently sell electric stoves, refrigerators, and the like. Such a company cannot cut off electric service because the patron is in default in the payment of a bill of that description. State v. Butte E. & P. Co., 43 Mont. 118, 115 P. 44, Miller v. Roswell, G. & El. Co., 22 N. M. 595, 166 P. 1177, and authorities and annotations therein cited." Thomas v. Mississippi Power & Light Co., 170 Miss. 811, 152 So. 269. See, also, 43 Am. Jur., Public Utilities and Services, § 23, p. 588; 4 McQuillin, Municipal Corporations (2d ed.), § 1919, p. 1023; Carmichael v. Southern Bell Telephone & Telegraph Co., 157 N. C. 21, 72 S. E. 619, 39 L. R. A. n. s. 651, 654, Ann. Cas. 1913B 1117; Southwestern Gas & Electric Co. v. Stanley, 123 Tex. 157, 70 S. W. 2d 413.

In view of the foregoing we think the district court erred in denying the plaintiffs injunctive relief, and reverse its holding with directions that it enter an order enjoining the City of Aurora from collecting, or attempting to collect, any bill accumulated and delinquent under the provisions of Ordinance 217 by the means therein provided, that is, by shutting off and disconnecting the water service of such patron.

REVERSED AND REMANDED WITH
DIRECTIONS TO ENTER INJUNCTIVE
RELIEF IN ACCORDANCE HEREWITH.

YEAGER and CHAPPELL, JJ., concur in the result.